UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| WILLIE WILLIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:18 CV 250 RWS |
| CAPE GIRARDEAU COUNTY JAIL, et al., | ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before me on defendant's unopposed motion for summary judgment. Despite being granted several extensions of time to do so, plaintiff has failed to file any opposition to summary judgment.[1] Because the undisputed facts

---

[1] Defendant's motion for summary judgment was filed on April 1, 2021. (Doc. 83) . Under the terms of the amended case management order, plaintiff's opposition to summary judgment was due no later than May 3, 2021. (Doc. 81). After plaintiff failed to oppose summary judgment, on July 19, 2021 the Court ordered plaintiff to show cause by August 1, 2021 why it should not rule the motion as unopposed. (Doc. 88). Plaintiff responded, stating that he was awaiting a response from a lawyer about representing him in this case. (Doc. 89). For that reason, the Court granted plaintiff an extension of time, up to and including August 30, 2021, to have counsel enter an appearance on his behalf or oppose summary judgment. (Doc. 90). Plaintiff was warned that failure to file an opposition to summary judgment by August 30, 2021 would result in the Court ruling his motion as unopposed. (Doc. 90). Plaintiff responded, asking the Court to wait until his release date of December 25, 2021, to rule on defendant's motion. (Doc. 91). According to plaintiff, he was still awaiting a response from counsel about representing him in this matter. (Doc. 91). That was the last communication the Court has received from plaintiff. Although plaintiff was apparently released from custody last month, he has failed to inform the Court of a new address of record or file an opposition to summary judgment. No attorney has entered an appearance on behalf of plaintiff, either. For these reasons, the Court will rule the motion as unopposed.

demonstrate that defendant is entitled to judgment as a matter of law, the motion for summary judgment will be granted.

## Background Facts

The following facts are undisputed. Plaintiff Willie Willis was an inmate at Cape Girardeau County Jail at all times relevant to his complaint. (SOF, ¶ 1). Defendant Charla Earnheart (improperly referred to as "Charolette Smith") was employed by Advanced Correctional Healthcare, Inc. at Cape Girardeau County Jail as a Licensed Practical Nurse ("LPN") (SOF, ¶ 2). Plaintiff filed his original complaint on October 18, 2018, alleging arm pain following a surgical procedure. (SOF, ¶ 3). In his amended complaint, plaintiff alleges that defendant refused to provide him with the pain medications his surgeon prescribed following a surgical procedure. (SOF, ¶ 4). Plaintiff alleges that defendant's actions amounted to deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (SOF, ¶ 5).

On September 30, 2018, plaintiff got into a fight with some fellow inmates which resulted in an injury to his right arm. (SOF, ¶ 7). He was taken to Saint Francis Medical Center ("Saint Francis") for medical treatment, where he was diagnosed with moderately displaced distal radial diaphyseal fracture, a mildly displaced ulnar styloid process fracture, an old fourth metacarpal fracture, interphalangeal joint osteoarthritis, and soft tissue swelling in his wrist. (SOF, ¶¶

8- 9).  Plaintiff was instructed to follow up with Dr. James Edwards, an orthopedic surgeon, for re-evaluation.  (SOF, ¶ 10).  Plaintiff was prescribed three medications by Saint Francis emergency room physicians upon his discharge on September 30, 2018 including: thirty Acetaminophen ("Tylenol Extra strength") 500 mg tablets, two tablets at a time by mouth every six hours as needed for moderate pain up to five days; ten Hydrocodone-acetaminophen ("Norco") 5-325 mg tablets by mouth every six hours, as needed for moderate pain for up to ten doses; and ten Naproxen ("Naprosyn") 500 mg tablets, one tablet by mouth two times a day with breakfast and supper for five days.  (SOF, ¶ 11).  Plaintiff returned to Cape Girardeau County Jail on September 30, 2018, with his arm wrapped in an ace bandage with a splint on it. (SOF, ¶ 12).

When an inmate returns to Cape Girardeau County Jail following medical treatment by an outside physician, it is standard procedure to document the inmate's prescribed medications, if any, on a Medication Verification Form and call the Cape Girardeau County Jail Physicians so that he/she may verify the medications or order changes.  (SOF, ¶ 13).  If the physician approves, modifies, or changes the medication orders, it is standard procedure to document the changes or approval on the Medication Verification Form.  (SOF, ¶ 14).  When Cape Girardeau County Jail inmates are sent for care by outside physicians, the jail one-site medical providers are not required to follow all recommendations of outside

3

physicians in treating inmates. (SOF, ¶ 60). Instead, on-site medical providers must make their own assessment and treating decisions about the inmates under their care while observing the procedures attendant to correctional facilities. (SOF, ¶ 61).

On September 30, 2018, upon plaintiff's return to Cape Girardeau County Jail, defendant[2] documented plaintiff's prescribed medications on a Medication Verification Form and called the Cape Girardeau County Jail physician, Dr. Charles Pewitt, to verify the medications. (SOF, ¶ 15). Dr. Pewitt modified the prescriptions listed and defendant documented the modifications to the medication orders on the Medication Verification Form. (SOF, ¶ 16). The Naproxen ("Naprosyn") was modified to 200mg of Ibuprofen in individual packets by Dr. Pewitt. (SOF, ¶ 17). The Acetaminophen ("Tylenol Extra Strength") 500 mg tablets was approved in individual packets by Dr. Pewitt. (SOF, ¶ 18). The Hydrocodone-acetaminophen ("Norco") 5-325 mg tablets were modified by Dr. Pewitt, and the modified order instructed that the medication be given by mouth, twice-a-day, which the nursing staff "must watch him take." (SOF, ¶ 19).

At Cape Girardeau County Jail, medications are dispensed by the nursing staff two times a day, in the morning and in the evening, to the individual inmates

---

[2] It is not disputed that defendant accurately recorded plaintiff's medical treatment. (SOF, ¶ 59).

4

in the housing units. (SOF, ¶ 20). The "watch-take" procedure at Cape Girardeau County Jail requires that a medical staff member visually see an inmate ingest his medication. (SOF, ¶ 21). The goal of this procedure is to ensure that inmates ingest their prescribed medications correctly and to prevent inmates from potentially misusing or giving the medications to other inmates. (SOF, ¶ 22). Plaintiff stated that he took these medications on September 20, 2018 as ordered by Dr. Pewitt without incident and followed the watch-take procedure. (SOF, ¶ 23).

On October 4, 2018, Plaintiff saw Dr. James Edwards at Advanced Orthopedic Specialists for an evaluation of his arm. (SOF, ¶ 24). Dr. Edwards evaluated plaintiff and noted that he had a 100% displaced radius fracture of the distal shaft and mildly displaced ulnar styloid fracture. (SOF, ¶ 25). Dr. Edwards determined that plaintiff needed surgery to correct his injury[3] and discussed the risks and benefits of the procedure with plaintiff. (SOF, ¶ 25). Dr. Edwards noted that plaintiff was incarcerated and stated that he "may use medications as [Cape Girardeau County Jail medical staff] will allow as far as anti-inflammatories." (SOF, ¶ 26).

On October 12, 2018, plaintiff was admitted to Saint Francis for surgery on his right arm. (SOF, ¶ 27). Dr. Edwards performed the procedure, which was an

---

[3] Dr. Edwards determined that there was a need for a surgical intervention to include open reduction internal fixation of the right radius shaft fracture at the distal aspect. (SOF, ¶ 25).

"open reduction internal fixation of the distal radial shaft fracture on the ride side." (SOF, ¶ 28). Plaintiff was discharged later that day. (SOF, ¶ 29). Dr. Edwards instructed plaintiff to continue taking Ibuprofen 200 mg tablets by mouth every six hours as needed for mild pain and prescribed him 56 Hydrocodone-acetaminophen 5-325 mg tablets, two tablets by mouth every six hours, as needed for moderate pain, for up to ten days for a maximum daily amount of eight tablets. (SOF, ¶¶ 30, 32).

Upon plaintiff's return to Cape Girardeau County Jail, defendant documented plaintiff's prescribed medications on a Medication Verification Form and called Dr. Pewitt to verify medications. (SOF, ¶ 33). Dr. Pewitt modified the prescriptions and defendant documented the modification to the medication order on the Medication Verification Form. (SOF, ¶ 34). Dr. Pewitt modified the Hydrocodone-acetaminophen 5-325 mg tablets and instructed that the medication be given by mouth, twice-a-day for five days, and the nursing staff "must watch him take [it]." (SOF, ¶ 35).

On October 14. 2018, defendant documented an encounter with plaintiff in a narrative progress note. The note stated, "Mr. Willis was [told] he would have to come in the moat area to make sure he was taking the hydrocodone due to being in a pod with other inmates. He refused to cooperate with this procedure." (SOF, ¶ 36). Plaintiff admitted in his deposition that there was an altercation with the

6

medical staff during a watch-take procedure to take his medications. (SOF, ¶ 37). If an inmate refuses to abide by the watch take procedure, it is standard practice for the medical staff to inform the site physicians, who may substitute that medication with something else. (SOF, ¶ 37). On October, 14 2018, following plaintiff's refusal to cooperate with the watch-take procedure, defendant informed the site physician, who ordered that the Hydrocodone be discontinued. (SOF, ¶ 39). Instead, he instructed that plaintiff was to receive Ibuprofen 200 mg tablets by mouth, twice a day for five days. (SOF, ¶ 39). As a nurse, defendant is not permitted to change an inmate's medications without an order from a physician. (SOF, ¶ 40). She is also not permitted to provide an inmate with any medication not ordered by a physician. (SOF, ¶ 41).

On October 26, 2018, plaintiff saw Dr. Edwards for a post-operative follow-up visit. (SOF, ¶ 42). Plaintiff's sutures were removed, steri-strips were placed, and he was put in short arm cast. (SOF, ¶ 43). Dr. Edwards observed plaintiff to be "doing fairly well," and he noted that Cape Girardeau County Jail medical staff were "holding off on giving him any narcotics in prison." (SOF, ¶ 43). Plaintiff was prescribed one medication by Dr. Edwards following the appointment on October 26, 2018: Ultram 50 mg tablets, one to two tablets by mouth every six hours, as needed. (SOF, ¶ 44).

Upon his return, defendant documented plaintiff's prescribed medication on a Medication Verification Form and called Dr. Pewitt to verify the medications. (SOF, ¶ 45). Dr. Pewitt did not approve the prescription and defendant documented his modification to the medication order on the Medication Verification Form. (SOF, ¶ 46). The Ultram 50 mg tablets were changed to Ibuprofen. (SOF, ¶ 47).

At plaintiff's next follow-up visit on November 26, 2018, Dr. Edwards observed that plaintiff's incisions were healing well with no warmth or erythema, his wrist alignment was adequate, and the distal ulnar fracture had good alignment. (SOF, ¶ 49). The plate fixation was also noted. (SOF, ¶ 49). Plaintiff remained in a short arm cast, and Dr. Edwards did not order any new or additional medications. (SOF, ¶ 50). There is no documentation that plaintiff was in pain. (SOF, ¶ 50).

Plaintiff saw Dr. Edwards again on December 21, 2018. (SOF, ¶ 51). Dr. Edwards noted that plaintiff's right upper extremity incision was well-healed, that his wrist alignment was good with no signs of loosening, and that he was again put in a short arm cast. (SOF, ¶ 52). Plaintiff reported being "somewhat sore but feeling better overall." (SOF, ¶ 54).

Plaintiff was transferred from Cape Girardeau County Jail to Eastern Reception, Diagnostic and Correctional Center ("ERDCC") on January 31, 2019.

8

(SOF, ¶ 51). Since plaintiff was transferred, defendant has had no further interaction with Plaintiff. (SOF, ¶ 57).

## Standards Governing Summary Judgment

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Coro*., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the non-moving party may not rest on the allegations in its pleadings; however, they must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, the Court will not weigh evidence and decide the truth of the matter, but need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## Discussion

Plaintiff brings a claim against defendant in her individual capacity under 42 U.S.C. § 1983. He alleges that defendant's failure to administer pain medications

9

as prescribed by Dr. Edwards amounts to deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.

"Prisoners and pretrial detainees are protected under the Constitution from a state actor's deliberate indifference towards the inmate's serious medical needs." *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 698 (8th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Davis v. Oregon Cnty.*, 607 F.3d 543, 548 (8th Cir. 2010)). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).

To establish a claim of deliberate indifference under 42 U.S.C. § 1983, plaintiff must prove that defendant was substantially aware of an excessive risk to his health or safety but disregarded this risk. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Plaintiff "must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

Plaintiff's deliberate indifference claim fails as a matter of law because plaintiff has no constitutional right to a requested course of treatment (here, to specific pain medications). *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th

Cir. 1997). Dr. Pewitt's treatment decision to switch plaintiff's prescribed pain medications to Ibuprofen does not rise to the level of excessive risk to plaintiff's safety that defendant was aware of and chose to ignore by following Dr. Pewitt's orders. Despite the recommendations made by Dr. Edwards concerning plaintiff's medications following his surgery, Dr. Pewitt, as the on-site physician at Cape Girardeau County Jail, remained free to exercise his own independent judgment and did not have to follow the recommendations of Dr. Edwards on whether or not to prescribe Hydrocodone or Ultram for pain. *See id.* (noting that "prison doctors remain free to exercise their independent medical judgment.").

There is no dispute that defendant did not refuse to provide pain medication to plaintiff and made no decisions about what type of medication defendant should receive. Instead, defendant followed the orders of Dr. Pewitt as to the dispensing of plaintiff's medication. As the nurse, defendant does not have the authority to make changes to plaintiff's medications and could not administer pain medications to plaintiff unless they were specifically approved by Dr. Pewitt. Defendant's desire to be given particular pain medications prescribed by Dr. Edwards, instead of those prescribed by Dr. Pewitt, amounts to a "mere disagreement with treatment decisions [which] dose not rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (cleaned up). Finally, Dr. Pewitt initially discontinued Hydrocodone and ordered that plaintiff be

11

given Ibuprofen because plaintiff refused to comply with the jail's "watch-take" procedure.

Under these circumstances, plaintiff has failed to demonstrate that defendant was deliberately indifferent to his serious medical needs. For these reasons, defendant is entitled to summary judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Earnheart's motion for summary judgment [83] is granted, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                              RODNEY W. SIPPEL
                                              UNITED STATES DISTRICT JUDGE

Dated this 10th day of January, 2022.